## DE GROAT v. TRAILERSHIPS, Inc.
### No. 23 of 1942.

District Court, E. D. Pennsylvania.

Feb. 2, 1943.

Conlen, LaBrum & Beechwood, of Philadelphia, Pa. (Mark E. Lefever, of Philadelphia, Pa., of counsel), for libellant.

Frank A. Moorshead, of Philadelphia, Pa. (H. E. Potter, of Philadelphia, Pa., of counsel), for respondent.

KALODNER, District Judge.

This is a libel brought in admiralty to recover wages.

Respondent, through its president, employed the libellant (a chief engineer) as engineer on two steamships owned by the respondent, which vessels were then not in operation.

Libellant contends that the compensation agreed upon was $250 per month, of which amount the sum of $100 was to be paid monthly, and the balance upon the happening of one or the other of certain events, to wit: (a) The sale of either or both vessels; (b) refinancing of either or both vessels; (c) placing of the vessels in operation; or (d) some other disposition of the vessels whereby funds would come into the hands of the respondent-owner.

The libellant worked for respondent for a period of five months and received $500 in wages, and then severed his employment.

Subsequently, one of the vessels was sold under a recapture clause for $20,000; the right of recapture was never exercised. Later, the other vessel was requisitioned by the government, and presumably the respondent will receive fair compensation for its use.

The libellant's legal position is that the happening of any of the contingencies expressly recited was not a condition precedent to the payment of the balance of the compensation, but only fixed the time for payment thereof. Moreover, the libellant contends that even if the events were conditions precedent, the contingencies did happen, as evidenced by the fact that one of the vessels was sold (resulting in the receipt of funds by the respondent), and later the other vessel was requisitioned, which fact will also result in bringing funds into the hands of the respondent.

The respondent's contention is that the payment of the additional $150 per month was absolutely conditioned upon the happening of only one of two contingencies: (a) That the vessels would be put in commission; or (b) that the vessels would be financed for operation; and that neither condition has been fulfilled. The respondent admitted that continued employment of the libellant, until commissioning or refinancing of the vessels took place, was not one of the considerations involved in the payment of the additional $150 per month compensation.

There is no need to analyze the testimony in detail. The issue narrows down to one of fact, i. e., whether the libellant's or the respondent's version of the terms of the contract is to be adopted.

I accept the libellant's version.

Two factors, among others, impel this conclusion. As to the first: While the contract of employment was entirely oral, a letter written by the respondent to the libellant under date of November 17, 1939 (libellant's Exhibit No. 1), is highly significant. The first paragraph of this letter reads as follows:

"We anticipate getting started on the work in Philadelphia within a very short time and pursuant to our conversation when you were here, if it is agreeable with you go to Philadelphia and start getting things in shape the first of next week at the rate of $250.00 per month, you furnishing your own subsistence, it being understood that you will not receive your salary until our financing is completed. I think you understand the circumstances and, of course, also understand that in the final analysis the ship will be responsible for the eventual payment of your salary."

It is to be noted that the compensation mentioned in the letter is $250 per month, and that the salary would not be received by the libellant "until * * * financing is completed". Since it is hardly to be assumed that either party contemplated that the libellant would work without pay even if the financing were not completed, the letter leads to the conclusion that the provision for payment is merely temporal in character, and not conditional. In other words, the time for refinancing merely fixed the time of payment. Under familiar rules, therefore, the wages of $250 per month would have to be paid (at least so far as the letter is concerned) within a reasonable time, whether the vessels were refinanced or not.

The other factor which impels me to accept the libellant's version of the terms of the contract is that of the libellant's position (i. e., occupation) and ability. He was a chief engineer, and it is hardly probable that he would consent to work for $100 a month, even though the vessels were not in operation. He testified that the work he did (draining and oiling the engines, inter alia) kept him busy practically during all the period of his employment; and that it was work within the province and duties of an engineer.

Moreover, under the libellant's version of the contract—which I have adopted as the correct one—the contingencies upon which the additional payments of $150 a month might have depended actually did happen. One vessel was sold under a recapture clause, and ultimately the other was requisitioned for use, presumably for compensation; wherefore, a disposition has been made of the vessels whereby money came, and additional moneys will come, into the hands of the respondent.

It is to be noted that respondent's president testified that he would have felt a moral obligation to pay the additional compensation in the event of the sale of a vessel, and that he could not take oath that there was no conversation about such a sale between the libellant and himself.

In accordance with the above, I make the following findings of fact:

1. Libellant, Andrew De Groat, is a seaman in the United States Merchant Marine. He is licensed as a Chief Engineer.

2. Respondent, Trailerships, Inc., is a corporation duly organized and existing under the laws of the State of Delaware. Respondent was the owner of the steamships "Governor Cobb" and "City of Lowell".

3. On or about November 17, 1939, libellant entered into a contract with respondent whereby respondent employed libellant as an engineer on its steamships "Governor Cobb" and "City of Lowell".

4. Respondent agreed to pay libellant wages in the sum of $250 a month. The parties agreed that $100 of said wages were to be paid by respondent to libellant each month, and the remaining wages at the rate of $150 per month were to be paid by respondent to libellant when the SS. "Governor Cobb" or the SS. "City of Lowell" was (a) refinanced; (b) placed in operation; (c) sold; (d) or otherwise disposed of.

5. The parties agreed that libellant would earn $250 each month that he worked for respondent but that $150 thereof would not become payable by respondent to libellant until the money was available to respondent from (a) refinancing; (b) placing in operation; (c) selling; (d) or otherwise disposing of the SS. "Governor Cobb" or the SS. "City of Lowell".

6. Libellant began work for respondent under contract on November 24, 1939, and continued to work for respondent under said contract until April 12, 1940.

7. During said period of employment libellant duly performed all the duties and services required of him by respondent under the terms of said contract.

8. Respondent paid libellant during said period of employment $100 per month, or a total of $500.

9. The SS. "City of Lowell" was sold by respondent in the summer of 1941.

10. The SS. "Governor Cobb" was requisitioned by the War Shipping Administrator of the United States on July 25, 1942, and released from the custody of this court by order of Honorable George A. Welsh, dated August 19, 1942.

11. Respondent has not paid libellant the $150 per month, or total of $750, wages earned by respondent, but whose payment was postponed under the agreement of the parties.

I state the following conclusions of law:

1. When libellant's employment with respondent was terminated on April 12, 1940, there was due to libellant by respondent the sum of $750 wages earned by libellant while in the employ of respondent, which were payable under the contract between the parties upon the (a) refinancing; (b) placing in operation; (c) selling; (d) or otherwise disposing of the SS. "Governor Cobb" or the SS. "City of Lowell".

2. Upon the sale of the SS. "City of Lowell" the respondent became obligated under its contract with libellant to pay libellant $750 wages which were due to libellant but previously were unpaid.

3. The requisition of the SS. "Governor Cobb" by the War Shipping Administrator of the United States constituted a "sale" or "other disposition" thereof under the contract between libellant and respondent.

4. Upon the requisition of the SS. "Governor Cobb" by the War Shipping Administrator of the United States, the respondent became obligated under its contract to pay libellant $750 wages which were due to libellant but previously were unpaid.

5. Respondent is indebted to libellant for unpaid wages for work done by libellant under said contract with respondent in the amount of $750, with interest thereon at 6 per cent from April 12, 1940, in the amount of $116.50, or a total of $866.50.

An order may be submitted in accordance with this opinion.